937 F.2d 54
 UNITED STATES of America, Appellee,
v.
Michael Vincent LANESE, a/k/a "Vinnie", Joseph Iannucci,
a/k/a "Joey I's", and Thomas Romano, a/k/a "T.R.",
Defendants,
Michael Vincent Lanese, a/k/a "Vinnie", Defendant-Appellant.
 No. 853, Docket 90-1525.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1991.
Decided June 21, 1991.
 
 Paul B. Bergman, New York City, for defendant-appellant.
 John H. Durham, Asst. U.S. Atty. for the District of Connecticut, New Haven, Connecticut (Stanley A. Twardy, Jr., U.S. Atty. for the District of Connecticut, New Haven, Conn., of counsel), for appellee.
 Before FEINBERG, MINER, and MAHONEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Under section 3B1.1(b) of the Sentencing Guidelines, a defendant's offense level is increased by three if the court finds that he was a "manager or supervisor ... and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. Sec. 3B1.1(b).[1] This appeal presents the principal question whether the activity of collecting a debt by extortionate means may be considered "otherwise extensive" due to its connection with an illegal gambling operation. On remand from this court, see United States v. Lanese, 890 F.2d 1284 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990) ("Lanese I"), the district court found such activity "otherwise extensive." We affirm.
 
 
 2
 Following a jury trial in the United States District Court for the District of Connecticut, Jose A. Cabranes, Judge, defendant-appellant Michael Vincent Lanese and two codefendants, Thomas Romano and Joseph Iannucci, were convicted of using, and conspiring to use, extortionate means to collect an extension of credit in violation of 18 U.S.C. Sec. 894(a)(1) (1988). The charges arose from their efforts to collect gambling debts from Eugene Golino, the government's principal witness.
 
 
 3
 In the fall of 1986, Golino began placing bets with Iannucci's gambling business in Bridgeport, Connecticut. Golino placed his wagers by telephone with a man named Dave, whom Golino never met, and settled accounts at Iannucci's barber shop. Having incurred a $12,000 debt, Golino told Iannucci he was unable to make immediate payment. Iannucci told Golino to expect a visitor, and subsequently Arnold Plotkin, an unindicted coconspirator, demanded payment from Golino after displaying a baseball bat and a gun to him.
 
 
 4
 After repaying the $12,000, Golino ran up a fresh debt of nearly $30,000. He was again approached by Plotkin, who demanded monthly payments. In September 1987, Plotkin introduced Golino to Romano, and Romano assumed Plotkin's role of collecting monthly payments. In addition, Romano provided Golino with telephone numbers so that Golino could place bets on football games with a man named Butch, and on basketball games with a man named Woody.
 
 
 5
 By December 1987, Golino had incurred approximately $80,000 in gambling debts with the bookmakers for Iannucci and Romano. When Golino and Romano met at a Bridgeport diner to discuss the debt, Romano summoned Lanese to the diner. Lanese, who was armed, demanded the money and required that Golino sign a promissory note, payable to Lanese, in the amount of $80,000. After Golino began to cooperate with the Federal Bureau of Investigation in January 1988, he again met with Romano and Lanese to discuss his debt, this time at a Bridgeport restaurant.
 
 
 6
 Following Lanese's conviction at trial, the district court sentenced him to 78 months imprisonment, a three-year term of supervised release, and a $25,000 fine. Lanese's offense calculation was increased three levels on the basis that he was a "manager or supervisor ... and the criminal activity involved five or more participants" within the meaning of section 3B1.1(b).
 
 
 7
 On appeal, we affirmed Lanese's conviction but remanded for further factual findings with regard to his sentence. See Lanese I, 890 F.2d at 1294. Lanese had not disputed that he acted as a "manager or supervisor." Id. at 1293. We found it "unclear," however, "whether there [was] sufficient evidence to support the district court's determination as to the number of 'participants,' for purposes of section 3B1.1(b)," and directed the district judge to make "a specific finding as to the identities of the 'participants.' " Id. at 1294. We also noted that although the district court had made no determination whether the criminal activity was "otherwise extensive," it could make such a finding on remand. Id.
 
 
 8
 Upon remand, the district court directed the parties to submit proposed findings of fact and conclusions of law. The court thereafter ruled that the sentence originally imposed was appropriate under the Sentencing Guidelines. First, the court found by a preponderance of the evidence that there were seven participants in the criminal activity that Lanese managed or supervised. In addition to Lanese, Romano, Iannucci, and Plotkin, the court specified Gary Tanguay, another man identified only as "Walt," and Michael Cuny. The court found that Tanguay and Walt had provided countersurveillance from nearby vehicles when Lanese met with Golino for the second time. In addition, the court found that Cuny had provided similar countersurveillance on a separate occasion, and had "witnessed" the nonexistent signature of Golino on a promissory note payable in the amount of $40,000 to Lanese.
 
 
 9
 Second, the district court concluded that "[t]he criminal activity in which Lanese was involved was 'otherwise extensive.' " In particular, the court found that Golino's debts arose out of an illegal gambling operation controlled by Lanese and Iannucci; that Golino placed bets with three different bookmakers for that organization (namely, Dave, Woody, and Butch); and that gambling records seized from Iannucci reflected substantial debts from several persons other than Golino.
 
 
 10
 The court accordingly reimposed the original sentence. This appeal followed.
 
 
 11
 Lanese challenges both of the district court's conclusions. He contends that a finding of "five or more participants" was unsupported by the evidence because there was no showing that Tanguay, Walt or Cuny was criminally responsible for the extortion of Golino, or were participants in that offense conduct. Lanese further contends that the district court, in finding the criminal activity "otherwise extensive," improperly relied on the ongoing illegal gambling.
 
 
 12
 Both arguments proceed from the premise that the "criminal activity" that a court may consider for purposes of section 3B1.1(b) is limited to the conduct constituting the offense of conviction, in this case the extortion of Golino. Admittedly, our prior opinion in Lanese I can be read as supportive of this position. We there noted that with the participation of the three bookmakers who took bets over the telephone, "the evidence clearly show[ed] that at least five persons were involved in the illegal gambling operations." 890 F.2d at 1293. Yet we determined that the record did not clearly establish "five or more participants" within the meaning of section 3B1.1(b), since no evidence showed "that the bookmakers participated in, or had knowledge of, the use of extortionate means to collect illegal gambling debts, the crime charged." Id. (emphasis added).
 
 
 13
 Notwithstanding this prior indication, we have recently addressed the issue more directly. In United States v. Perdomo, 927 F.2d 111, 116 (2d Cir.1991), we recounted that a November 1990 amendment to the introductory commentary to Chapter 3, Part B of the Sentencing Guidelines expressly directs that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of Sec. 1B1.3," the "relevant conduct" guideline. U.S.S.G. ch. 3, pt. B, intro. comment. We concluded "that the November 1990 amendment merely clarifies a preexisting Guidelines understanding of 'role in the offense'--albeit one not reflected in prior case law--as including consideration of the defendant's role in uncharged conduct deemed 'relevant' under Sec. 1B1.3." 927 F.2d at 117; see United States v. Lillard, 929 F.2d 500, 503 (9th Cir.1991); United States v. Rodriguez, 925 F.2d 107, 111 (5th Cir.1991); United States v. Fells, 920 F.2d 1179, 1183-85 (4th Cir.1990) (Wilkins, J.). In view of these intervening developments, we are not bound by our prior consideration of this issue as the law of the case. See United States v. Adegbite, 877 F.2d 174, 178 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989).
 
 
 14
 Nonetheless, there is force to Lanese's argument that he did not manage or supervise "five or more participants" in the pertinent "criminal activity," however defined. He points out that the commentary accompanying section 3B1.1 defines "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. Sec. 3B1.1, comment. (n.1). We consider it a rather close question whether there was sufficient evidence for the district court to determine, by a preponderance of the evidence, that Tanguay, Walt, and Cuny were "criminally responsible" for either Lanese's offense of conviction or section 1B1.3 "relevant conduct." Indeed, in Lanese I, we characterized as "speculation" the government's assertion, based upon the testimony of FBI agents, that Tanguay and Walt "appeared to be serving as guards or backup for Lanese" during a meeting with Golino. 890 F.2d at 1293. We need not resolve the issue, however, since we readily conclude that the district court properly found the relevant criminal activity to be "otherwise extensive" within the meaning of section 3B1.1(b).
 
 
 15
 Lanese does not dispute the district court's factual finding that his gambling operation was extensive. In contrast to the more narrow definition of "participant," the commentary accompanying section 3B1.1 provides: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." U.S.S.G. Sec. 3B1.1, comment. (n.2).
 
 
 16
 In view of our recent ruling in Perdomo, the only question remaining is whether this gambling activity was "relevant" (within the meaning of section 1B1.3) to the extortion of Golino. U.S.S.G. Sec. 1B1.3(a) provides in pertinent part:
 
 
 17
 [A]djustments in Chapter Three ... shall be determined on the basis of the following:
 
 
 18
 (1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, ... or that otherwise were in furtherance of that offense.
 
 
 19
 Lanese's gambling operation clearly furthered his extortion of Golino, since it created the debt which Lanese unlawfully sought to collect. We accordingly find that the gambling activity was relevant within the meaning of section 1B1.3, and therefore that the district court properly relied upon that activity in enhancing Lanese's sentence under section 3B1.1.
 
 
 20
 Finally, we reject Lanese's request that his sentence be vacated and the case remanded so that the district judge can explain the disparity between Lanese's sentence and the lesser sentences of his codefendants. Having concluded that the guidelines were properly applied as to Lanese, we fail to see the purpose of a remand. United States v. Joyner, 924 F.2d 454, 459-61 (2d Cir.1991), forecloses the possibility of departure on the basis of disparity among codefendants' sentences. Furthermore, "[i]t is settled law in this circuit that a defendant generally may not appeal from a district court's decision not to depart downwardly from the applicable Guidelines range...." United States v. Sharpsteen, 913 F.2d 59, 62 (2d Cir.1990).
 
 
 21
 The judgment of conviction is affirmed.
 
 
 
 [1]
 It was conceded at oral argument that Lanese is in any event subject to a two-level enhancement pursuant to U.S.S.G. Sec. 3B1.1(c), which requires only that a defendant be "an organizer, leader, manager, or supervisor in any criminal activity."