UNITED STATES of America, Appellee,

v.

**Stanley JACOBSON, Nora Jacobson, Maureen Conlan, Richard Fromme, Gerhard Plaut, Osvaldo Stejmberg, Alan Jacobson, Lawrence Galina, Kenneth Cohen, Steven Goldfarb, Charles Berliner, Paul Berger, Nicholas Lobasso, Michael Bouer, John Mahon, Lawrence Nemeroff, Richard Lippman, Steven Rodman, James Bozzi, Defendants,**

and

**Andrew Kogut, Defendant–Appellant.**

No. 1856, Docket 93–1217.

United States Court of Appeals,
Second Circuit.

Argued Aug. 11, 1993.

Decided Jan. 19, 1994.

---

Susan E. Brune, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Nelson W. Cunningham, Asst. U.S. Atty., of counsel), for appellee.

Jerry D. Bernstein, New York City (Michele C. Cacioppo, Bernstein & Maffeo, of counsel), for defendant-appellant.

Before: WINTER, MINER, and WALKER, Circuit Judges.

WINTER, Circuit Judge:

Andrew Kogut appeals from Judge Duffy's imposition of a sentence of twelve months' imprisonment, three years' supervised release, and a $10,000 fine following his guilty plea to one count of conspiracy, 18 U.S.C. § 371 (1988), to receive misbranded and adulterated drugs in interstate commerce and to commit wire fraud. Although Kogut's plea agreement waived his right to appeal his sentence, Kogut challenges the length of his sentence compared with those of his co-conspirators as a denial of due process, U.S. Const. amend. V, based on Judge Duffy's reference to Kogut's national origin at the

sentencing hearing. After oral argument, we asked Judge Duffy to supplement the record within twenty-one days regarding the disparity in sentences among the co-conspirators but retained jurisdiction. Judge Duffy thereafter filed an opinion questioning his power to act while we retained jurisdiction but explaining his reasons for the sentencing disparity. We address the proper procedure for supplementing the record and hold that Kogut has not waived his right to appeal from an arguably unconstitutional sentence. However, we affirm.

Kogut, a licensed pharmacist, pled guilty to participation in a drug diversion scheme in which he purchased black-market drugs at a discount and resold them to consumers. The drugs were obtained through Medicaid fraud, illegal use of samples, or outright theft. Purchasers were defrauded and endangered because the drugs lacked control numbers and expiration dates necessary to ensure the efficacy and safety of the medications. The government and Kogut agreed to an offense level of 11 and a criminal history category of I, dictating a sentence in the range of eight to fourteen months. In the plea agreement, Kogut and the government agreed not to appeal if the sentence was within that range.

At the sentencing hearing, Judge Duffy stated:

> You [Kogut] come to this country from behind what was then the Isron [sic] Curtain. . . . You come here and one thing you have going for you is brains. . . . You have brains, you have an opportunity given to you by the new country. The one that you left certainly would never give you anything like this opportunity. . . . Maybe it is a failing in the generation from which I came. We always believed that if we got something, we were obligated to give something back, something of value. You don't seem to believe that. You got all kinds of things, you got freedom, you got an opportunity to use your brains, you had a damned good life; and for peanuts you were willing to screw it up without regard to the people whose lives you might be smashing. You had as much feeling for them as the Romanian secret police might

have for people who are enemies of society—nothing whatsoever.

Judge Duffy then sentenced Kogut to twelve months' imprisonment.

Subsequent to Kogut's sentencing, his co-conspirators, who were sentenced at the same Guidelines level, received more lenient sentences, most splitting between four or five months of imprisonment and equal time in home detention. In particular, two co-conspirators whom the government considered more culpable than Kogut received shorter jail terms, six months and eight months respectively, although their fines were four times as large. The government conceded at oral argument that Kogut's status as a naturalized citizen was not a valid basis for a disparity in sentences and that Judge Duffy's remarks at sentencing gave no basis other than that status for Kogut's sentence.

We entered an order requesting Judge Duffy to supplement the record within twenty-one days regarding his reasons for Kogut's sentence. We retained jurisdiction, however, and there was no formal remand.

In his opinion elaborating on the reasons for the sentence, Judge Duffy stated that he imposed a harsher penalty on Kogut because of his intelligence and lack of remorse rather than because of his naturalized status. In this regard, Judge Duffy pointed to his statements at sentencing that: "You come here and the one thing you have going for you is brains" and "You have brains, you have an opportunity given to you by the new country" and "You got all kinds of things, you got freedom, you got an opportunity to use your brains." Moreover, Judge Duffy found that Kogut did not display a "sufficient degree of remorse" to escape the imposition of a harsher sentence than those accorded his co-conspirators. Judge Duffy also questioned the basis for our retaining jurisdiction over the matter.

Before turning to the merits, we address the issue of our procedure of requesting supplementation of the record while retaining jurisdiction. We address this issue both because of Judge Duffy's skepticism regarding the procedure used and because our clerk's office has raised a question as to whether a mandate should be issued in such cases. Be-

cause of the institutional importance of the question, this opinion was circulated to the entire court before filing.

The procedure of seeking supplementation of a record without a formal remand or the need for a new notice of appeal before the appellate panel acts on the supplemental record is established in the caselaw of this and other circuits. In *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1019 (2d Cir.1975), Judge Friendly's opinion invoked the court's broad power under 28 U.S.C. § 2106 to "require such further proceedings to be had as may be just under the circumstances," to retain jurisdiction while remanding to the district court to supplement the record with further findings and conclusions. In *In re Lomas Financial Corp.,* 932 F.2d 147, 151–52 (2d Cir.1991), we directed the parties to seek "a supplemental statement" from the bankruptcy court as to whether its order necessitated further proceedings in that court and retained jurisdiction to rule on the merits pending receipt of that statement. In *Gulliver v. Dalsheim,* 739 F.2d 104, 106 (2d Cir.1984), the panel retained jurisdiction in a habeas case while remanding to allow the district court to apply intervening decisions of this court. In *FDIC v. Grella,* 553 F.2d 258, 264 (2d Cir.1977), the panel retained provisional jurisdiction of the case with instructions to the district court to dismiss the case should the parties comply with its ruling. *See also Easley v. University of Michigan Bd. of Regents,* 853 F.2d 1351, 1358 (6th Cir.1988) (remand while retaining jurisdiction to ascertain judge's neutrality); *In re Pope,* 580 F.2d 620, 623 (D.C.Cir.1978) (remanding to district court while retaining jurisdiction requesting statement of reasons clarifying the exercise of district judge's discretion); *Pure Oil Co. v. Superior Oil & Tire Co.,* 317 F.2d 330, 333 (6th Cir.1963).

■ Precedent thus allows us to seek supplementation of the record while retaining jurisdiction, without a mandate issuing or the need for a new notice of appeal. However, we believe that the better practice in such cases is to direct that a mandate issue forthwith and that the mandate state the conditions that will restore jurisdiction to this court.

First, the issuance of a mandate ensures that the district court will have the power to do what we order and allows us flexibility in ordering actions by the district court that are clearly inconsistent with a retention of jurisdiction in this court. For example, enforcement of compulsory process and entry of a new judgment by the district court are not acts that are normally within the power of a district court when the court of appeals has "retained" jurisdiction.

Second, nothing is lost in requiring issuance of a mandate. The procedure we have followed in the past is usually used where expedition is necessary and a formal remand followed by a new notice of appeal seems a waste of resources and perhaps unjust as well. However, a panel can order that the mandate issue forthwith and contain conditions upon the occurrence of which jurisdiction will be automatically restored to the appellate panel without a new notice of appeal. For example, in the present matter we might have ordered that the mandate issue forthwith and that it state that jurisdiction would be restored to this panel when either party informed us by letter that the district court had supplemented the record or at the expiration of twenty-one days, whichever occurred first. Every purpose served by a procedure in which we "retained" jurisdiction would have been served by the mandate, and the power of the district court to act would not have been subject to doubt. Although there is no explicit authority for restoration of appellate jurisdiction without a notice of appeal, we believe that if Section 2106 authorizes an informal remand while the appellate court "retains" jurisdiction, it certainly authorizes issuance of a mandate specifying the conditions for the automatic restoration of appellate jurisdiction.

■ Turning to the merits of the appeal, we believe that Kogut did not waive his right to appeal on the grounds specified. Although an agreement not to appeal a sentence within the agreed Guidelines range is enforceable, *United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir.) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Rivera,* 971 F.2d 876, 896 (2d Cir.1992), we

see nothing in such an agreement that waives the right to appeal from an arguably unconstitutional use of naturalized status as the basis for a sentence.

The pertinent paragraph, which we set out in the margin,[1] is concerned with "Guidelines adjustments, enhancements, or calculations." The right to appeal is waived so long as the sentence is within the prescribed range "even should the Court ... reach that sentencing range by a Guidelines analysis different from that set out above." Given that a waiver of the right not to be sentenced on the basis of a constitutionally impermissible factor may be invalid, *see United States v. Marin,* 961 F.2d 493, 496 (4th Cir.1992) ("a defendant could not be said to have waived his right to appellate review of a sentence ... based on a constitutionally impermissible factor such as race"), we read the agreement narrowly and hold that the present appeal, which raises no Guidelines issues, has not been waived.

 The government also argues that Kogut has waived his present challenge to his sentence by failing to raise the issue in the district court. However, Kogut's co-conspirators were all sentenced after him, and an objection based on an unconstitutional disparity could not have been made at the time of his sentencing. There was thus no waiver.

 We now turn to the validity of the sentence. The district court has wide discretion in determining where within the Guidelines range a defendant should be sentenced. Reference to national origin and naturalized status is permissible, so long as it does not become the basis for determining the sentence. *United States v. Tarricone,* 996 F.2d 1414, 1424–25 (2d Cir.1993); *see also United States v. Holguin,* 868 F.2d 201, 205 n. 7 (7th Cir.), *cert. denied,* 493 U.S. 829, 110 S.Ct. 97, 107 L.Ed.2d 60 (1989). Kogut's longer sentence was within the Guidelines range and can be vacated only upon a showing that his naturalized status, rather than individual,

distinctive aspects of his character or the offense, dictated the disparate sentencing results. *United States v. Lanese,* 937 F.2d 54, 58 (2d Cir.1991) (per curiam); *United States v. Joyner,* 924 F.2d 454, 459–61 (2d Cir.1991).

 Judge Duffy's clarification persuades us that Kogut's naturalized status was not the basis for the sentencing disparity. A defendant's intelligence is an individual, distinctive factor. It is relevant both to his or her ability to conform to legal standards and to earn a living while conforming to those standards. There may also be a need to deter those whose intelligence alerts them to various criminal opportunities and enables them to seize those opportunities effectively. Lack of remorse is also such a factor. In that regard, Kogut continued to advance, until the eve of sentencing, the baseless contention that customers who purchased the drugs were not endangered. Judge Duffy was in a good position to evaluate Kogut's intelligence and lack of remorse and within his discretion to weigh those factors in the sentencing balance.

We therefore affirm.

---

1. "In the event that the Probation Department or the Court contemplates any Guidelines adjustments, enhancements, or calculations not referred to above, the parties each reserve the right to make all appropriate arguments concerning the same. Notwithstanding the previous sentence, it is specifically understood and agreed that neither party will appeal a sentence by the Court that falls within the sentencing ranges calculated above, or at the sentencing ranges applicable in the event the Court rejects the Government's recommendation for the additional two-level reduction described above, even should the Court and/or Probation Department reach that sentencing range by a Guidelines analysis different from that set forth above." (Plea Agreement, p. 4).