**UNITED STATES of America,**
**Appellee,**

v.

**Irvin DAVIDSON, Defendant–**
**Appellant.**

**Docket No. 00–1756.**

United States Court of Appeals,
Second Circuit.

Dec. 20, 2001.

Gerald L. Shargel; Marc Fernich, of counsel and on the brief, New York, NY, for Appellant.

Barbara Guss, Assistant United States Attorney; Gary Stein, David Raymond Lewis, Christine H. Chung, Assistant United States Attorneys, of counsel, Mary Jo White, United States Attorney, on the brief, United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Present LEVAL, CABRANES and STRAUB, Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and is AFFIRMED in part, VACATED in part, and RE-MANDED.

On appeal, Irvin Davidson mounts several attacks on his conviction, mainly focused on the sufficiency of the evidence. He also challenges the application of the enhancements used in calculating his sentence.

Because Davidson's sentence was based on clearly erroneous findings of fact, we vacate the sentence and remand for resentencing. In all other respects, we affirm the judgment of the District Court.

\* \* \*

In 1998, Davidson was charged in an eighteen count indictment with conspiracy to defraud the United States and the IRS, and to commit tax evasion (Count 1), Wire Fraud (Counts 2–11), Money Laundering (Counts 12–14) and income tax evasion (Counts 15–18). In essence, the indictment charged that, between 1992 and 1994, Davidson engaged in a scheme whereby he entered into business agreements with others and induced up-front payments from them without ever intending to perform his part of the bargains, and, after receiving the payments, he falsely declared his counter-parties to be in breach of contract. The advance payments would then be transferred to and among various accounts controlled by Davidson or his wife, and ultimately spent on Davidson's personal expenses. Although Davidson—a British national—lived and worked in New York during this time period, he never paid any income tax in the United States, nor did he pay any income taxes anywhere else in the world.

After the District Court dismissed Count 15—a tax count—on the Government's motion, a three-week trial was held on the remaining counts. At the close of the evidence, the District Court dismissed Count 2 and Count 3, which were wire fraud counts based on telephone calls related to one particular transaction. The jury convicted Davidson of the remaining fifteen counts.

In sentencing Davidson, the District Court enhanced his offense level by four points pursuant to U.S.S.G. § 3B1.1(a) for being "an organizer or leader of criminal activity that . . . was . . . extensive" and by four points for the amount laundered pursuant to U.S.S.G. § 2S1.1(b)(2). An offense level of 29 coupled with a criminal history category of I yielded a range of 87–108 months. The District Court sentenced Davidson to the top of the range.

Davidson was convicted at trial of laundering $306,000—$250,000 from the J & T transaction that was transferred to Interlotto and $56,000 from the Pacific Oil & Gas transaction that was transferred to A.D. Creations and Interlotto. In determining the amount laundered for sentencing purposes, however, the District Court added to the $306,000 proven at trial $200,000 from the Rice Growers transaction and $250,000 from the U–Trade transaction, for a total amount laundered of $756,000.

In including the funds from the Rice Growers and U–Trade transactions, the District Court adopted the findings of the Probation Office's Presentence Investigation Report as its findings of fact. Hearing Tr. dated Sept. 7, 2000, at 24; *see also id.* at 26–27. With respect to those funds, the PSR stated that all $200,000 of the funds from the Rice Growers were wired "to an account held under [Davidson's] wife's name at the Bank of New York [in Monsey] for the purposes of concealing the money," PSR ¶ 12, and that all $250,000 of the funds from the U–Trade transaction were "wired to an account held under [Davidson's] wife's name at the Bank of New York." PSR ¶ 16.

The Government now concedes that, contrary to the above-quoted statements in the PSR, (1) not *all* of the money was transferred to the Bank of New York accounts, and (2), more critically, the bank accounts were in not only his wife's name, but also his own name. Br. for the United States at 149–51. Specifically, the Government now argues that the evidence at trial showed that $257,000 of the Rice Growers and U–Trade funds were transferred into accounts held jointly by Davidson and his wife at the Bank of New York, $40,000 of those funds were transferred to Davidson's brother in Israel, $20,000 of those funds were transferred to Interlotto. *Id.* at 151. The Government points to no evidence suggesting that the remaining $133,000 was ever transferred from the Atlantic Bank account in which the funds from the relevant transactions were initially received from Davidson's victims.

The distinction between a transfer to an account held solely in the name of a third-party and an account held jointly by a third-party and the defendant is critical for purposes of determining whether a transfer was made with the intent to conceal that is an essential element of money laundering. *See United States v. Kalust,* 249 F.3d 106, 111–12 (2d Cir.2001) (Winter, J., concurring) ("Far from disguising ill-gotten cash, depositing the fruits of a crime in a bank account openly controlled by the defendant, as occurred here, leaves an incrimination paper trail for investigators in the first place they would look."). Similarly, a transfer to a sibling, standing alone, may not suggest intent to conceal as strongly as transfers to shell companies or other entities controlled by the defendant,

such as the transfers to A.D. Creations and Interlotto that formed the basis of the counts of conviction for money laundering.

In any event, it is clear from the record that the District Court did not make findings of fact with respect to the individual transfers now relied upon by the Government, but rather adopted the (concededly) clearly erroneous findings of the PSR. In light of this factual confusion and the fact that the Government's now contends that a one-level diminution of the enhancement for the amount of funds laundered would necessitate a one-level increase in the multiple groups adjustment prescribed by U.S.S.G. § 3D1.4 (thereby leaving the net offense level unchanged), we feel that both of these issues are better left for the District Court to resolve in the first instance. *Cf. United States v. Mickens,* 977 F.2d 69, 72 (2d Cir.1992) (stating that "we are not in a position to make *de novo* factual findings" with respect to a sentencing decision). Accordingly, we vacate Davidson's sentence and remand for resentencing.

We have considered all of Davidson's arguments with respect to his convictions and his remaining arguments with respect to his sentence, and we find them to be without merit.

Accordingly, with the exception noted above, the judgment of the District Court is affirmed.