**UNITED STATES of America,**
**Appellee,**

v.

**Irvin DAVIDSON, Defendant–**
**Appellant.**

**No. 05–1767.**

United States Court of Appeals,
Second Circuit.

March 30, 2006.

Barbara Guss, Assistant United States Attorney (John M. Hillebrecht, Assistant United States Attorney, Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief), New York, NY, for the Appellee, of counsel.

John W. Mitchell, New York, NY, for the Defendant–Appellant.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT D. SACK, Circuit Judges, and Hon. DAVID G. TRAGER, Judge.*

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the case be REMANDED to the District Court.

Defendant–Appellant Irvin Davidson ("Davidson") appeals from a judgment of conviction entered on March 18, 2005 in the United States District Court for the Southern District of New York (Colleen McMahon, Judge), following a December 20, 2001, remand order by this Court. We assume that the parties are familiar with the facts, the procedural history, and the scope of the issues presented on appeal.

Davidson raises numerous objections to his sentence. The only ones properly before us are (1) the factual issue, specified in our earlier remand order, of whether Davidson laundered the proceeds of his fraud upon U–Trade, Ltd. ("U–Trade transaction"), see United States v. Davidson, 26 Fed.Appx. 64 (2d Cir.2001); and (2) the constitutionality of the District Court's sentence under the Supreme Court's subsequent decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and its lower court progeny.

---

* The Honorable David G. Trager, United States District Judge, Eastern District of New York, sitting by designation.

With respect to the U–Trade transaction, the panel that first heard Davidson's appeal accepted that this transaction was relevant fraud conduct, but vacated Davidson's sentence because the Government conceded that the *money laundering* calculation had been based on a factual error in the Presentence Investigation Report ("PSR"). Specifically, while the PSR stated that Davidson had transferred the U–Trade proceeds to an account solely held by his wife, a circumstance that might have supported an inference of deliberate concealment, the proceeds in fact, as the Government conceded, went to an account that Davidson held jointly with his wife. We remanded so that the District Court could consider, in the first instance, the Government's alternative argument for including at least some of the U–Trade funds in the laundering calculation, along with the Government's further argument that doing so would result in the very same recommended range (87–108 months) as before.

█ On remand, the District Court found that, although U–Trade proceeds ultimately reached an account held jointly by Davidson, the circuitous route by which they did so, along with the fact that they were transferred through a correspondent account, established, by a preponderance of the evidence, a design to conceal. *See* 18 U.S.C. § 1956(a)(1)(B)(i) (defining, as one form of money laundering, transactions knowingly "designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"). We find the District Court's reasoning insufficient to support this finding, and therefore, pursuant to the procedure outlined in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir.1994), remand for the District Court to re-address the issue.

As the Tenth Circuit explained in *U.S. v. Garcia–Emanuel*, 14 F.3d 1469, 1474 (10th Cir.1994), the money laundering statute "is aimed at transactions that are engaged in for the *purpose* of concealing assets," and the concealment must be more than incidental or "trivial." Here, it is true that the U–Trade proceeds were transferred first to a correspondent account at Swiss Bank in Zurich held by the Atlantic Bank of Commerce ("ABC") ("to the credit of" Ellimed, a corporation of Davidson's), then to the Swiss Bank's New York branch, and only then to Davidson. However, Davidson offers a number of legitimate reasons for these steps that, on their face, have some force.

First, it is not evidence of money laundering that the money would go through Ellimed rather than directly to Davidson because Ellimed (which U–Trade knew to be Davidson's company) was the corporation doing business with U–Trade, and Davidson had the money transferred to Ellimed based on U–Trade's purported breach of their contract. Second, Davidson argues that the money was first transferred though an ABC correspondent account at Swiss Bank because it was in the form of Swiss francs and had to be converted to dollars, and because Ellimed's bank, ABC, had no branch in Europe.[2]

---

**2.** As Senator Collins has explained,

Correspondent banking is the means by which one bank—the "correspondent"—provides financial services to another bank, often referred to as the "respondent" bank. Typically, the respondent bank has no physical presence in the jurisdiction in which it maintains a correspondent account. Correspondent banking thus enables the respondent bank to provide services to its customers that otherwise would be unavailable because of geographic limitations.

Correspondent banking is an integral part of the domestic and international banking systems. Without correspondent banking, in fact, it would often be impossible for

Third, the transfer order directing Barclay's Bank to wire the funds to the ABC correspondent account states that the funds are "credit of Ellimed Energy Corp SA," which cuts against the inference that Davidson used a correspondent account to conceal Ellimed's receipt of the funds. Fourth, the record contains what appears to be written instructions from Davidson to ABC, in a letter dated February 10, 1993, to transfer the relevant funds "today" from its Zurich account directly to *Davidson's personal bank account.* (This last document suggests that Davidson never directed that the funds be transferred from the Zurich branch to the New York branch of Swiss Bank and that this added step was merely an administrative means to effect the international transfer and convert the currency.)

We also note that the District Court appears to have found the first transfer that the Government alleges to be money laundering—the transfer of funds from the escrow account in England to the ABC correspondent account in Zurich—to be the transaction that completed Davidson's fraud. *See* Tr. of March 16, 2005 Sentencing Hr'g, at 38. A transaction cannot be money laundering unless it involves money that was previously under "the control of the perpetrator[ ]." *United States v. Szur,* 289 F.3d 200, 214 (2d Cir.2002) (internal quotation marks omitted); *see also United States v. Napoli,* 54 F.3d 63, 68 (2d Cir. 1995). On remand, the District Court should determine whether the U–Trade funds were already under Davidson's control when they were being held in escrow in England. In so determining, the district court should take into account its

previous findings that Robert Stevens, who held the funds in escrow, was not involved in Davidson's scheme to defraud, *see* Tr. of Sep. 7, 2000, Sentencing Hr'g, at 34, and that the funds were "presumably being held safe" while in escrow, *see* Tr. of March 16, 2005, Sentencing Hr'g, at 38.

Thus, although we recognize that correspondent accounts are susceptible to use for money laundering because they tend to obscure the true "client" at interest, Davidson's mere use of this method is not sufficient proof of laundering, without further analysis or supplemental evidence of his purpose (such as expert testimony on international banking norms). We therefore remand this issue, and solely this issue, to the District Court, so that the court can consider more closely the question of whether Davidson attempted to conceal the trail of the U–Trade proceeds. If the District Court finds that the U–Trade transaction did not constitute money laundering, it follows that nobody engaged in money laundering with respect to U–Trade. The District Court should, in that event, reconsider whether Davidson should still receive a four-level enhancement for leading "extensive" money laundering activity. *See* U.S.S.G. § 3B1.1(a). Having resolved these issues and, if necessary, recalculated the Guidelines recommendation, the District Court should consider that recommendation, along with the general sentencing factors set forth in Section 3553 of Title 18 of the United States Code, to determine an appropriate sentence.

■ Davidson also argues, pursuant to *Booker,* that his constitutional rights were violated because his sentence was en-

banks to provide comprehensive nationwide and international banking services—among them, the vital capability to transfer money by wire with amazing speed and accuracy across international boundaries.

*Hearings on the Role of U.S. Correspondent Banking in International Money Laundering,*

Subcommittee on Investigations of Senate Committee on Government Affairs (opening statements of Senator Susan M. Collins, Subcommittee Chairman), March 1, 2001, *available at* http://www.senate.gov/govt-aff/030101_collins.htm (visited March 22, 2006).

hanced based on crimes not charged by the indictment, not found by a jury, and not proven beyond a reasonable doubt. This court has already addressed and rejected these arguments. *See United States v. Garcia,* 413 F.3d 201, 220 n. 15 (2d Cir.2005) ("Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker."); *U.S. v. Vaughn,* 430 F.3d 518, 528 (2d Cir.2005) ("[T]he Supreme Court made clear in Booker that when a judge sentences a defendant within the statutory range authorized by the jury verdict and uses advisory Guidelines to calculate that sentence, there is no Sixth Amendment violation."). Nor is there any authority behind, or inherent persuasiveness to, Davidson's additional argument that the District Court should have followed the offense grouping rules set forth in subsequent versions of the Guidelines, as opposed to the Guidelines in place at the time of Davidson's original sentencing. We have considered Davidson's remaining arguments and find them to be meritless and/or not properly before us.

For the foregoing reasons, we **AFFIRM** the District Court's sentence except for the enhancements applied based on the court's finding that Davidson laundered U–Trade proceeds, which we **REMAND**. Although the mandate shall issue forthwith, we retain jurisdiction so that either of the parties may seek appellate review (as limited herein) by notifying the Clerk of the Court within thirty days of entry of the District Court's judgment on remand. Such notification will not require the filing of a new notice of appeal. If notification occurs, the matter will be referred automatically to this panel for disposition.