10-1865-cr
United States v. Sleiman

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of June, two thousand eleven.

PRESENT:  AMALYA L. KEARSE,
                    GERARD E. LYNCH,
                    J. CLIFFORD WALLACE,[*]
                                    *Circuit Judges.*

-------------------------------------------------------------------

UNITED STATES OF AMERICA,
                                    *Appellee,*

            v.                                                          No. 10-1865-cr

ALI SLEIMAN,
                                    *Defendant-Appellant.*

-------------------------------------------------------------------


FOR APPELLANT:            RICHARD B. LIND, Law Offices of Richard B. Lind, New York, New York.

FOR APPELLEE:             CHRISTOPHER D. FREY, Assistant United States Attorney, (Brent S. Wible, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

---

[*] The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED in part and REMANDED in part for further proceedings.

Ali Sleiman pled guilty to three counts of money-laundering conspiracy. See 18 U.S.C. § 1956(h). Although the district court later dismissed one of those counts, it denied Sleiman's motion to withdraw his plea on the other two counts and sentenced him principally to 190 months' incarceration, 36 months' supervised release, and forfeiture in the amount of $10,157,000.

Sleiman first challenges the district court's denial of his motion to withdraw his plea. More than 15 months after entering his plea, Sleiman moved to withdraw it, arguing that the district court had accepted it without properly ensuring that Sleiman understood "the nature of each charge" to which he was pleading, Fed. R. Crim. P. 11(b)(1)(G), and without determining "a factual basis for the plea," id. 11(b)(3). The district court denied that motion. We review the district court's decision for abuse of discretion, see United States v. Adams, 448 F.3d 492, 498 (2d Cir. 2006), and find none here.

We may easily reject Sleiman's claim on Count One, which charged a conspiracy to launder money from 1996 to 1998. The district court, it is true, assured that Sleiman received an explanation of the elements only of the crime of conspiracy, and not of the elements of those crimes that were the objects of the conspiracy. But while a full explanation might be

2

the better practice, "[a] district court is not required to follow any particular formula in determining that [the] defendant understands the nature of the charge to which he is pleading guilty." United States v. Andrades, 169 F.3d 131, 135 (2d Cir. 1999). At Sleiman's plea hearing, he acknowledged that he had read and discussed with his attorney the superseding information, which explained the theories on which he was charged. He then made a full allocution that expressly covered all the elements of the crime. Sleiman's factual admissions demonstrate that he understood the nature of the charge on Count One, or at worst that any misunderstanding was harmless, see Fed. R. Crim. P. 11(h), and also provides a fully adequate factual basis for his plea on that count, see United States v. Maher, 108 F.3d 1513, 1524 (2d Cir. 1997) (requiring that the district court "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty").

For Count Two, which charged a conspiracy from 1998 to 2005, the plea hearing was somewhat less thorough, with Sleiman's attorney simply stating that "Mr. Sleiman was operating in Lebanon and in Canada doing the same kind of thing" as he had just admitted doing with respect to Count One. Again, however, even assuming that an ideal hearing would have involved more development of the elements and the facts supporting them, Sleiman identifies no harmful error in the plea proceeding. The statement of counsel, in Sleiman's presence, adopted Sleiman's own admissions with respect to Count One. While the reference to Lebanon and Canada might have suggested a further inquiry into the United States nexus of this activity, we find no prejudice to Sleiman, particularly given that evidence

from Sleiman's proffers, properly admitted at the sentencing hearing, makes clear that such a nexus did exist in the relevant period. See Fed. R. Crim P. 11(h).

Sleiman next argues that the district court should not have admitted evidence from his proffer sessions with the government at his sentencing hearing. In connection with those sessions, Sleiman signed a cooperation agreement that rendered "all statements made by Defendant" to law enforcement "admissible in evidence" if "it [was] determined that Defendant ha[d] . . . violated any provision of this Agreement." As the district court found, Sleiman traveled from New York to California and then lied about his whereabouts to the government, which violated his pledge in the cooperation agreement to "truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which [the United States Attorney's Office] inquire[d] of him, which information can be used for any purpose." The district court therefore did not err in admitting and considering Sleiman's proffer evidence.

Finally, Sleiman challenges his sentence, and here his argument finds more traction. The district court applied the money-laundering Guideline in effect since November 1, 2001, see U.S.S.G. § 2S1.1 (2001), which resulted in an offense level of 35 and (because Sleiman had a criminal history category of I) a Guidelines range of 168 to 210 months' incarceration. The district court selected a roughly middle-of-the-range sentence of 190 months.

Sleiman argues, however, that his criminal activity ended before November 1, 2001, and that the district court should therefore have used the 2000 Guidelines manual, see U.S.S.G. § 2S1.1 (2000), under which his offense level would have been only 29 and his

4

sentencing range 87 to 108 months, just over half of his range under the 2001 manual. Because the 2000 Guidelines were more advantageous to Sleiman, he was entitled to be sentenced under the earlier manual if his last criminal conduct did indeed fall before the cutoff date. See United States v. Ortiz, 621 F.3d 82, 87 (2d Cir. 2010).[1] The question is when Sleiman stopped committing the crime.

The district court did not provide a satisfactory answer to this question. In its sentencing order, the court identified the "the last established date that criminal activity occurred" as July 2002, comfortably after the new Guideline went into effect on November 1, 2001. The government now concedes, however, that the July 2002 transaction to which the district court referred should not have been counted because "[t]he evidence . . . showed that this conduct occurred in Canada, not the United States." That finding of the district court, therefore, does not support the use of the 2001 Guideline.

The district court also inquired whether other conduct might justify reliance on the 2001 manual, but its apparent finding on that point is not sustainable either. Sleiman acknowledged to the court that the notes of his proffer sessions recorded a transaction (or transactions) in 2001 in which criminal proceeds were transmitted from California. The court noted that "2001 is a twelve-month period"; Sleiman argued that the government could

_____

[1] Not every increase in the Sentencing Guidelines requires using the old manual. Because the Guidelines are now advisory, see United States v. Booker, 543 U.S. 220, 245 (2005), we recently held that a defendant was not entitled to the older, lower Guidelines if using the current ones did not create a "substantial risk" of a more severe sentence, Ortiz, 621 F.3d at 87, quoting United States v. Turner, 548 F.3d 1094, 1100 (D.C. Cir. 2008); see also U.S.S.G. § 1B1.11(a), (b)(1). Neither party suggests, however, that the Guidelines calculation was not a significant factor in the selection of the sentence in this case.

5

not prove that the conduct continued into November of that year. But the district court appeared to shift the burden to Sleiman to prove that the transaction did *not* occur on or after November 1, 2001. Specifically, it seized upon Sleiman's concession that "I can't point to anything in the record . . . that says that there was no conduct after November 1, 2001." This was error: it is the government, not the defendant, that "bears the burden of proving . . . facts relevant to [this aspect of] sentencing." United States v. Williams, 247 F.3d 353, 358 n.7 (2d Cir. 2001). Absent other evidence, it cannot logically be inferred that, because something occurred in 2001, it must have occurred in November or December of that year. The district court's alternative finding, therefore, also fails.

The government argues that the full record shows that Sleiman laundered money from the United States well past the relevant deadline and in fact into 2003. Sleiman disputes the point. Since the findings actually made by the district court do not support the application of the 2001 Guidelines manual, it is not for us to make substitute findings on a disputed record. The parties' factual contentions are best addressed by the district court in the first instance. We therefore remand in accordance with the procedures of United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994). On remand, the district court shall determine whether the government has proven by a preponderance of the evidence that Sleiman conducted money laundering connected with the United States on or after November 1, 2001. If it has, the district court shall make appropriate fact-findings in support of its sentence; if it has not, the district court shall re-sentence Sleiman based on the 2000 Guideline for money

6

laundering.[2] The mandate shall issue forthwith. Either party may restore jurisdiction to this Court to consider whatever arguments remain or arise relating to Sleiman's sentence by sending a letter to the Clerk of Court within 14 days of the district court's decision. Any such further proceedings will be assigned to this panel.

For the foregoing reasons, we AFFIRM in part and REMAND in part for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[2] The district court may also consider on remand whether subtracting the amount involved in the 2002 Canadian transaction from the total amount of laundered money attributed to Sleiman makes any difference in the sentence imposed.