**UNITED STATES, Appellee,**

v.

**Kevin JOHNSON, Defendant–Appellant.**

**Docket No. 03–1063.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 26, 2003.

Decided: Oct. 21, 2003.

Neil M. Barofsky, Assistant United States Attorney, for James B. Comey, United States Attorney for the Southern District of New York (Laura Grossfield Birger, Assistant United States Attorney, of counsel), for Appellee the United States.

Colleen P. Cassidy, Legal Aid Society, Federal Defender Division, New York, New York, for Defendant–Appellant Kevin Johnson.

Before: WINTER, CALABRESI, and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge.

This case raises the issue of whether an otherwise valid waiver of appeal contained in a plea agreement can be enforced against a defendant who contends that his sentence was imposed based upon a constitutionally impermissible consideration. It also involves whether a sentencing judge can impose a longer term of probation on a defendant because of his financial situation and current inability to pay a restitution award. Defendant appeals from an order of the United States District Court for the Southern District of New York (Owen, *J.*) affirming a judgment of conviction and sentence following his plea of guilty to one count of bank larceny before Magistrate Judge Frank Maas. For the reasons stated below, we affirm.

## I. BACKGROUND

Kevin Johnson ("defendant"), a married father of three who worked as a toll collector on the Throgs Neck Bridge, had been in trouble with the law but once, years before. He had pleaded guilty, at the age of twenty-one, to criminal possession of a weapon in the third degree and was sentenced only to a term of probation. In the summer of 2000, however, an unidentified individual overheard Johnson lamenting his lack of funds and inability to pay bills. Approaching defendant, this person showed him a check for $100,000, issued by the State–Wide Insurance Company. The individual claimed that he would give Johnson $3,500 if he could use Johnson's account to negotiate a similar instrument. When defendant agreed, the person deposited a counterfeit check for $8,250 in Johnson's bank account at Chase Manhattan Bank ("Chase"), an FDIC insured institution. Defendant subsequently withdrew the funds, transferring approximately $4,700 to the other individual and retaining most of the rest himself.

As a result of these activities, Johnson was charged with committing bank fraud, in violation of Title 18, United States Code, Section 1344(b). He then entered into a written agreement with the government, consenting to plead guilty to a one-count misdemeanor charge of bank larceny under Title 18, United States Code, Section 2113(b), and stipulating that he would not appeal any sentence set within or below the designated Sentencing Guidelines range. This range included a potential term of imprisonment of up to six months

and a possible fine between $1,000 and $10,000.

The Presentence Investigation Report did not recommend imprisonment but rather three years of probation. It also provided for full restitution of the $8,200 as mandated by statute. *See* 18 U.S.C. § 3663A; 18 U.S.C. § 3664; U.S.S.G. § 5E1.1 (2001). At sentencing, Magistrate Judge Maas denied defense counsel's request that he reduce this term of probation and instead imposed probation for five years, citing Johnson's inability to repay the $8,200 immediately and the resultant need to monitor his effort to furnish restitution. The judge also specified, in response to defendant's request, "that in the event that full restitution has been made within three years, probation *will terminate* at the end of the three years" (emphasis added). The terms of the judgment itself seemingly differ somewhat from the sentencing colloquy, stating that "The defendant is hereby placed on probation for a term of five (5) years. The Probation Officer may recommend minimal supervision after three years. Probation *may be terminated* after three years if restitution has been paid in full" (emphasis added). Aside from a twenty-five dollar assessment, the judge declined to impose any further fine or imprisonment.

Defendant appealed his term of probation to the district court, which affirmed, determining that the five-year period of probation was within the Guidelines range, had been properly imposed by the sentencing judge, and fell within the latter's discretion under the Guidelines.

This appeal followed.

## II. ANALYSIS

### A. Waiver of Appeal

■ The government argues, as a threshold matter, that the terms of Johnson's plea agreement bar the instant appeal. Although Johnson did waive his right of appeal, we follow this Circuit's prior decisions in determining that the agreement does not foreclose Johnson from pursuing his constitutional claim. In general, a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed-upon Guidelines range is enforceable. *See United States v. Fisher*, 232 F.3d 301, 303 (2d Cir.2000); *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir.2000). However, we have also held that, when a sentence is based upon a consideration arguably impermissible under the Constitution, we will read such an agreement narrowly. *United States v. Rosa*, 123 F.3d 94, 98 (noting that "We have held that 'a waiver of the right not to be sentenced on the basis of a constitutionally impermissible factor may be invalid....'"); *United States v. Jacobson*, 15 F.3d 19, 22–23 (2d Cir.1994) ("Although an agreement not to appeal a sentence within the agreed Guidelines range is enforceable, we see nothing in such an agreement that waives the right to appeal from an arguably unconstitutional use of naturalized status as the basis for a sentence." (internal citations omitted)). We think that the logic of *Jacobson* and *Rosa* applies to the case at hand.[1]

Other circuits have concurred in placing limits upon the enforcement and enforceability of waivers of appeal. Some have

---

1. Our decision in *United States v. Garcia*, 166 F.3d 519 (2d Cir.1999), is readily distinguishable. There we determined that the defendant's "undeveloped invocation of 'due process,'" *id.* at 521, was simply "a poorly disguised attack on the merits of her sentence," and that, therefore, the waiver remained enforceable. Johnson, in this case, has not only raised a genuine constitutional issue, but also relies on an argument of the same type as the equal protection claim brought in *Jacobson*.

held, for example, that a waiver cannot bar a defendant from alleging that ineffective assistance of counsel renders the plea agreement itself invalid. *See United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir.2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a [habeas] petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver."); *United States v. Henderson,* 72 F.3d 463, 465 (5th Cir. 1995) ("We agree ... that dismissal of an appeal based on a waiver in the plea agreement is inappropriate where the defendant's motion to withdraw the plea incorporates a claim that the plea agreement generally, and the defendant's waiver of appeal specifically, were tainted by ineffective assistance of counsel.").

Most relevant to this case are those decisions commenting upon potential constitutional problems with sentences meted out pursuant to a plea agreement. In *United States v. Marin,* 961 F.2d 493 (4th Cir.1992), the Fourth Circuit asserted that "[A] defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a sentence ... based on a constitutionally impermissible factor such as race." *Id.* at 496; *see also United States v. General,* 278 F.3d 389, 399 n. 4 (4th Cir.2002) (citing *Marin* and noting that the government had conceded that a waiver did not bar challenges to defendant's sentence pursuant to *Apprendi* or on account of his lack of competency, since both were "challenges that are not subject to contractual waivers"). The Eighth Circuit also recently reaffirmed its commitment to granting a "miscarriage of justice" exception to the enforcement of waivers. *United States v. Andis,* 333 F.3d 886 (8th Cir.2003) (*en banc*). Although the court noted that "the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception," *id.* at 892, it determined that a sentence allegedly based upon a miscarriage of justice should be reviewed on appeal despite any waiver, *id.* at 891, and that release conditions would constitute such a miscarriage of justice if "they were based on some constitutionally impermissible factor, such as race." *Id.* at 894. *See also United States v. Khattak,* 273 F.3d 557, 563 (3d Cir.2001) (stating that, when deciding if a waiver should be enforced, an appellate court's guiding consideration should be "whether the [sentencing] error would work a miscarriage of justice").

█ For these reasons, we determine that where, as here, a defendant alleges that his sentence is constitutionally deficient because it rests improperly upon his status, a plea agreement cannot serve to waive his appeal.

### B. Probation Extension

█ Johnson contends that the court below, by extending the term of probation to five years on account of his financial situation and current inability to pay restitution, acted inconsistently with the fundamental fairness that the Due Process Clause of the Fifth Amendment requires. It should be noted at the outset that a defendant's financial circumstances are generally irrelevant to sentencing. A district court can, however, take a defendant's ability to pay into account in framing a restitution order and setting a payment schedule. *See, e.g., United States v. Lucien,* 347 F.3d 45 (2d Cir.2003); 18 U.S.C. § 3664. Because probation may be imposed so as to induce a conscientious effort to comply with such a payment schedule, the length of a defendant's probation may

in some circumstances correlate with his financial means.

Johnson's constitutional argument relies principally on *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), in which the Supreme Court considered the claim of an indigent defendant who had been returned to prison because he could not pay a fine and restitution. Implementing a due process approach while also paying homage to equal protection, the Court held that a defendant's probation could not be revoked for failure to pay a fine or restitution without evidence and findings that he was responsible for the default or that other forms of punishment were inadequate. *Id.* at 665, 103 S.Ct. 2064. Justice O'Connor, writing for the majority, employed a balancing test, inquiring into "the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between ... means and purpose, [and] the existence of alternative means for effectuating the purpose ..." *Id.* at 667, 103 S.Ct. 2064 (quoting *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970)).

Applying *Bearden's* balancing approach to Johnson's claim suggests that the probation term imposed does not violate due process. The effect on defendant's liberty interest in this case is much less significant than it was in *Bearden,* and there is a rational connection between the purpose of the sentence—to ensure that Chase will receive its restitution payment—and the means employed—extending Johnson's probation. Furthermore, the available alternative—that of procuring a civil judgment against Johnson—furnishes a poor

substitute for monitoring Johnson's progress in payment under probation.

A liberty interest is, admittedly, involved here. As defense counsel observed at the sentencing hearing, "being on probation is a somewhat onerous—it's not a cost-free enterprise. You have to report to your probation officer and it limits your ability to do things in a lot of ways." In this case, however, the effect upon the individual liberty interest at stake—avoiding a further term of probation—is not nearly as significant as that involved in imprisonment or proceedings to revoke probation. *See Skipworth v. United States,* 508 F.2d 598, 601 (3d Cir.1975) ("While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as 'grievous' a 'loss' as revocation .... In fact, the primary 'loss' suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation.").

■ Furthermore, probation does not simply constitute punishment, but in many cases—as in this—serves other functions. According to the Guidelines themselves, a sentencing judge's determination as to whether to impose probation and for what duration should take into account not only its punitive value, but also its impact on the defendant's future behavior. As the Guidelines state, "[A] term of probation may ... be used to enforce conditions such as fine or restitution payments." U.S.S.G. Manual § 5B1.2, cmt. background (1987).[2] Commentators have also observed that the goals of probation sentences include not

---

**2.** At oral argument, defendant's counsel contended that we should not rely on background commentary. This Circuit has, however, already acknowledged that "Commentary found in the Sentencing Guidelines Manual is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Guevara,* 277 F.3d 111, 119 (2d Cir.2001) (internal quotation marks omitted).

only punishment, but also rehabilitation and control. *See* Richard D. Sluder, Allen D. Sapp, & Denny C. Langston, *Guiding Philosophies for Probation in the 21st Century,* 58 Fed. Probation 3, 4 (June 1994). Although Johnson's probation was extended, the extra term of probation neither functions as punishment in this instance nor was imposed by Judge Maas for punitive reasons. Indeed, the magistrate judge at the sentencing colloquy explicitly modified the terms of probation such that probation would terminate at the end of three years if payment were made, and we read the judgment as ratifying this understanding.[3]

We would, of course, be concerned if the terms of probation were not commensurate with the legitimate purposes of probation. The transcript of the sentencing proceeding, however, demonstrates the link between the means employed and the ends attained. Johnson's wages are being garnished at the rate of around $1,000 per year. If Johnson provided restitution only in this amount for a probation term of three years, he would still owe Chase $5,200 at the end of probation; even after five years, Johnson's debt will still amount to $3,200 unless he pays an amount over and above the garnished wages. The magistrate judge's comments during sentencing reveal that concern about how to secure Johnson's compliance with the restitution order most effectively and efficiently informed his decision to set the term of probation at five years. As the judge asserted:

> [T]he reason that I have selected five years rather than three is not, Mr. Johnson, because I believe necessarily that

you were going to get yourself in trouble again, but because, in light of these circumstances, I recognize that $8200 is a substantial sum to have to repay and rather than requiring Chase Manhattan to resort to its civil remedies, I want to be in the position to ensure that they get back every nickel that they are entitled to. Requiring that you be under supervision for five years is a way to ensure that that occurs.

> So I am going to impose a five-year term of probation, subject to the proviso I mentioned. I am going to require that there be full restitution in the amount of $8200 to Chase Manhattan Bank. The mandatory probation conditions will be imposed .... There will also be, in addition to the standard conditions of probation, the special conditions suggested ..., namely, that Mr. Johnson shall provide the probation office with any requested financial information; not incur new credit charges or open additional lines of credit without the officer's approval unless the defendant is in compliance with whatever installment payment schedule is set up; that Mr. Johnson is to report to the nearest probation office within 72 hours of release and be supervised in his district of residence.

In addition to explicitly stating that the extended term of probation should assist in ensuring that Johnson will pay as much of the required restitution as possible, the judge imposed conditions designed to facilitate such payment. By specifying that the defendant should supply the probation officer with certain financial data and open new credit lines only if he were fulfilling

---

**3.** Furthermore, to the extent that there is a conflict between the terms of the judgment and those of the sentencing colloquy, the oral statement controls. In *United States v. Truscello,* 168 F.3d 61 (2d Cir.1999), we reaffirmed that, "where there is a direct conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment ... the oral pronouncement ... must control." *Id.* at 62 (internal citation and quotation marks omitted and alterations in the original).

his restitution obligations, the judge demonstrated that the main goal of the five-year term was to provide security for Johnson's financial obligation to Chase. Nor does the discussion contain any suggestion that Judge Maas envisioned revoking Johnson's probation in a manner that would violate *Bearden*—or contemplated revocation as a likely possibility at all. He noted during the hearing that probation "mostly creates problems if you have later difficulties with the law," and explained in the cited passage that he did not necessarily believe that Johnson would have such difficulties.

Although an alternative to probation—involving execution of a civil judgment against Johnson—does exist, and was suggested by defense counsel at sentencing, this method of inducing compliance with the restitution order has several defects. At the end of probation, the government or Chase could, to different degrees, civilly enforce payment of any remaining balance. *See* 18 U.S.C. § 3664(m)(1)(A) (stating that "An order of restitution may be enforced by the United States" in a variety of manners); 18 U.S.C. § 3664(m)(1)(B) (noting the procedures by which a victim entitled to receive restitution can obtain a lien upon the defendant's property); *see also United States v. Dubose*, 146 F.3d 1141, 1144 (9th Cir.1998) (enumerating the means of enforcing a restitution order that has been defaulted upon). This would result not only in diminished flexibility in payment schedule, *United States v. Rostoff*, 164 F.3d 63, 68 (1st Cir.1999), but also, as Judge Maas seems to have contemplated, place an excessively onerous burden on the bank—and, by extension, the government—if they were obliged to resort to additional remedies in seeking restitution payments. Furthermore, the judge's decision to impose a lengthier term of probation in this case has, in fact, resulted from his use of one of the alterna-

tives to incarceration specifically mentioned in *Bearden*—that of "extend[ing] the time for making payments." *Bearden*, 461 U.S. at 672, 103 S.Ct. 2064; *see also Williams v. Illinois*, 399 U.S. at 245 n. 21, 90 S.Ct. 2018 (1970) (citing as alternatives to incarcerating an indigent unable to pay a fine, without determining their validity, that the sum "could be collected through an installment plan as is currently used in several States" or that "the trial judge could impose a parole requirement on an indigent that he do specified work during the day to satisfy the fine"). After defense counsel acknowledged that Johnson probably could not satisfy the restitution amount within a year, Judge Maas expressed concern about what would happen if he instructed Johnson to "pay back $8200 over a period of longer than one year" and "impose[d] a condition of probation of one year." This exchange suggests that the justification for implementing five rather than three years of probation arose out of the attempt to employ one of the alternatives *Bearden* suggested.

■ The *Bearden* Court's remarks about a court's discretion in determining an initial sentence, combined with the latitude that the Sentencing Guidelines grant to a judge in setting the length of probation, also conduce to affirming Johnson's sentence. Distinguishing between setting the sentence and revoking probation, Justice O'Connor maintained in *Bearden* that,

[W]hen determining initially whether the State's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including his employment history and financial resources. As we said in *Williams v. Illinois*, "[a]fter having taken into consideration the wide range of factors underlying the exercise of his sentencing function, nothing we now

hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law." *Bearden*, 461 U.S. at 669–70, 103 S.Ct. 2064 (internal citation omitted); *see also id.* at 671, 103 S.Ct. 2064 ("We have already indicated that a sentencing court can consider a defendant's employment history and financial resources in setting an initial punishment. Such considerations are a necessary part of evaluating the entire background of the defendant in order to tailor an appropriate sentence for the defendant and crime."). As part of the sentencing court's synoptic survey of the particular case and the defendant's characteristics, it may thus examine how well a defendant's finances will enable him to pay restitution and implement the method it finds most suited to ensuring repayment of the victim. The Sentencing Guidelines themselves suggest this outcome. As they state, "Often, it may not be possible to determine the amount of time required for the satisfaction of such [restitution] payments ... in advance. This issue has been resolved by setting forth two broad ranges for the duration of a term of probation depending on the offense level. Within the guidelines set forth in this section, the determination of the length of a term of probation is within the discretion of the sentencing judge." U.S.S.G. Manual § 5B1.2, cmt. background (1987). Under both *Bearden* and the Guidelines, the judge enjoys considerable scope and discretion to consider a defendant's financial resources in setting his initial sentence.

### CONCLUSION

For the reasons stated above, we affirm the judgment of the District Court. Although we hold that, despite the waiver contained in his plea agreement, Johnson can appeal his sentence on the constitutional ground that it was improperly based upon his indigency, we also decide that the balance of factors reveal that his sentence was constitutionally imposed.