09-4391-cr
United States v. Riggi (Abramo)

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: January 13, 2011    Decided: August 10, 2011)

Docket No. 09-4391-cr

- - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                 <u>Appellee</u>,

       - v.-

GIOVANNI RIGGI, also known as John Riggi, also known as Uncle John, GIROLAMO PALERMO, also known as Jimmy Palermo, CHARLES MAJURI, STEFANO VITABILE, also known as Steve Vitabile, FRANCESCO POLIZZI, also known as johndoe6, also known as Frank Polizzi, also known as Francesco Polizzi, ANTHONY MANNARINO, also known as Anthony Marshmallow, also known as Anthony Marshmallo, LOUIS CONSALVO, also known as johndoe8, also known as Louie Eggs, also known as Frank Scarabino, GREGORY RAGO, FRANK D'AMATO, BERNARD NICASTRO, FRANK SCARABINO, also known as Franky the Beast, GIUSEPPE SCHIFILLITI, also known as Pino Schifilliti, CHARLES STANGO, also known as Charlie the Hat, also known as The Mad Hetter, also known as Goombs, also known as Goombsie, JOSEPH COLLINA SR., SIMONE PALERMO, also known as Daddy, SALVATORE TIMPANI, also known as Sal the Barber, also known as Little Sal, JOSEPH BRIDESON, also known as Big Joey, AMERICO MASSA, also known as Mike Massa, MARTIN LEWIS, RUBEN MALAVE, MICHAEL SILVESTRI,

                 <u>Defendants</u>,

PHILIP ABRAMO,

                 <u>Defendant-Appellant</u>.

- - - - - - - - - - - - - - - - - - - - - - -x

Before: JACOBS, Chief Judge, WESLEY and CHIN, Circuit Judges.

Defendant–Appellant Philip Abramo appeals from a judgment of conviction and sentence of the United States District Court for the Southern District of New York (Rakoff, J.), arguing that his rights under the Ex Post Facto Clause were violated by the application of the 2008 Sentencing Manual to a murder conspiracy that concluded in 1989. He contends that this alleged violation and his ignorance of his ex post facto rights render the appeal-waiver provision in his plea agreement unenforceable.

We enforce the appeal-waiver provision and dismiss the appeal.

INGA L. PARSONS, Marblehead, MA, for Defendant-Appellant.

STEVE C. LEE, Assistant United States Attorney (Andrew L. Fish, Assistant United States Attorney, on the brief), for Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant–Appellant Philip Abramo appeals from a judgment of conviction and sentence of the United States District Court for the Southern District of New York

2

(Rakoff, J.), arguing that his rights under the Ex Post Facto Clause were violated by the application of the 2008 Sentencing Manual to a murder conspiracy that concluded in 1989. He contends that this alleged violation and his ignorance of his ex post facto rights render the appeal-waiver provision in his plea agreement unenforceable.

Abramo returns to this Court several years after we vacated his conviction and life sentence, holding that the admission of eight plea allocutions of non-testifying co-conspirators was plain error under the intervening Crawford v. Washington decision. 541 U.S. 36 (2004); see United States v. Riggi, 541 F.3d 94 (2d Cir. 2008). On remand, Abramo pled guilty pursuant to a plea agreement to charges that carried a greatly reduced maximum aggregate sentence of eighteen years: conspiracy to commit murder, conspiracy to commit loansharking, and receiving the proceeds of extortion, in violation of 18 U.S.C. §§ 1959(a)(5), 371, and 880, respectively.

The plea agreement contained a broad appeal-waiver provision by which Abramo agreed to forgo appealing any sentence of eighteen years or less.[1] The parties also

---

[1] The full waiver reads:

> It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28,

3

stipulated to several Guidelines particulars: first, that "[t]he Guidelines provisions in effect as of November 1, 2008, apply to this case"; second, that the appeal waiver was binding "even if the Court employ[ed] a Guidelines analysis different from that stipulated to [t]herein"; third, that the Guidelines sentence was the statutory maximum of 216 months. Joint Appendix at 59, 61, 63.

The plea was accepted by the district court at a July 9, 2009 plea colloquy. Abramo confirmed he was knowingly relinquishing the right to appeal.

However, Abramo's sentencing memorandum raised an interesting ex post facto issue. The charged murder conspiracy ended in 1989 upon the death of the targeted victim. The Guidelines for murder conspiracy were raised significantly in 1990: Conspiracies that "result[ed] in the death of a victim" were linked to the first-degree murder

United States Code, Section 2255 and/or Section 2241, any sentence of 18 years (i.e., the Stipulated Guidelines Sentence) or less, and (ii) that the Government will not appeal any sentence of 18 years. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

Joint Appendix at 63.

4

Guidelines. See U.S.S.G. §§ 2A1.1, 2A1.5(c)(1); id. App. C, amend. 311 (1990). Abramo argued that applying the 2008 Guidelines--as stipulated--would violate his rights under the Ex Post Facto Clause because this significant enhancement was added after the charged murder conspiracy had ended.[2] (Applying the 1989 Guidelines would have resulted in a range of 78 to 97 months.)

But Abramo did not move to withdraw his plea; he raised the issue only for the district "[c]ourt's attention as part

---

[2] The "one-book" rule raises a hurdle for Abramo. A "sentencing court must generally apply the version of the Guidelines that is in effect at the time of sentencing," United States v. Rodriquez, 989 F.2d 583, 587 (2d Cir. 1993); but if the court determines that the application would violate the Ex Post Facto Clause, it "shall use the Guidelines Manual in effect on the date that the offense of conviction was committed," U.S.S.G. § 1B1.11(b)(1). Where multiple offenses were committed (and the present Manual would trigger an ex post facto violation), the one-book rule dictates that the Guidelines Manual in effect for the most recent offense is applied to all offenses. See id. § 1B1.11(b)(2)-(3).

The superseding information alleges that the loansharking conspiracy ran from 1990 through October 2000. Under the one-book rule, the earliest Manual that could apply is the 1999 version, which contains the stricter murder-conspiracy provisions. Abramo counters that he technically allocuted only to conduct through October 1990, which he argues supersedes the date range from the information (thus making the 1989 Guidelines applicable and preserving the ex post facto issue).

Because we enforce the appeal waiver, we need not reach this issue.

of its review of [the 18 U.S.C.] § 3553(a) factors," as a "relevant fact . . . in assessing a fair and just sentence." Joint Appendix at 107-09. Nor did the issue factor into his requested sentence, which sought a reduction in the 216-month statutory maximum for the time he served on related charges in Florida.[3]

When the issue was raised at sentencing, the district court viewed the discrepancy between the 1989 and 2008 murder-conspiracy Guidelines as evidence "that the guidelines are not operating in the manner in which they were intended to operate." Joint Appendix at 157. The court indicated that the discrepancy therefore would not "make the slightest difference in [Abramo's] sentence," id.; it instead referenced the nature of the offense itself:

> [L]ooking at the conspiracy to murder, why is that not an offense that calls for a[n] 18 year penalty? . . . [W]hat crime more calls out for deterrence, for punishment, for the most severe penalties that the court allows than getting together to murder a human being?

Joint Appendix at 172. But because the court had to select a Guidelines range, Gall v. United States, 552 U.S. 38, 49

---

[3] Abramo's primary concern was to seek a downward departure for the 70 months (61 months after good time) he served in Florida on related stock-fraud charges. Due to a long delay in the sentencing for the conviction that we later vacated, Abramo lost the opportunity for the Florida offense to run concurrently.

(2007), it chose to apply the 2008 Guidelines. Abramo was sentenced to 186 months' imprisonment: the 216-month statutory maximum with a partial offset for the 70-month sentence he served in Florida.

This appeal followed. Abramo argues that the application of the harsher murder-conspiracy provisions in the 2008 Manual violated the Ex Post Facto Clause. He offers two theories as to why the appeal-waiver provision is unenforceable: first, his ex post facto rights were unwaivable; second, any waiver was unknowing, due to his ignorance of his ex post facto rights.


**DISCUSSION**

"Waivers of the right to appeal a sentence are presumptively enforceable." United States v. Arevalo (Vigil), 628 F.3d 93, 98 (2d Cir. 2010). We have "repeatedly upheld the validity of [appeal] waivers" if they are "knowingly, voluntarily, and competently provided by the defendant." United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000). The "exceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of our jurisprudence." Id. at 319. We construe plea agreements "according to contract law principles," United

7

States v. Yemitan, 70 F.3d 746, 747 (2d Cir. 1995), but "because plea agreements are unique contracts, we temper the application of ordinary contract principles with special due process concerns for fairness and the adequacy of procedural safeguards." United States v. Woltmann, 610 F.3d 37, 39-40 (2d Cir. 2010) (internal quotation marks and ellipsis omitted).

I

A violation of a fundamental right warrants voiding an appeal waiver. For example, we have voided appeal waivers where the sentence imposed was based on unconstitutional factors--such as race, see Gomez-Perez, 215 F.3d at 319, naturalized status, see, e.g., United States v. Jacobson, 15 F.3d 19, 23 (2d Cir. 1994), or the ability to pay restitution, see, e.g., United States v. Johnson, 347 F.3d 412, 415, 419 (2d Cir. 2003). Similarly, we have voided waivers where a sentencing court "failed to enunciate any rationale for the defendant's sentence," and thus "abdicat[ed] [its] judicial responsibility." Woltmann, 610 F.3d at 40 (internal quotation marks omitted) (voiding waiver because sentencing court relied on plea agreement "to the exclusion of" the 18 U.S.C. § 3553(a) factors and a

8

U.S.S.G. § 5K1.1 letter urging a below-Guidelines sentence).

On the other hand, other meaningful errors are insufficient to void an appeal waiver. We have enforced waivers where a sentence was arguably imposed contrary to a statutory requirement. See Yemitan, 70 F.3d at 748 (enforcing appeal waiver despite potential noncompliance with statement-of-reason requirement in 18 U.S.C. § 3553(c)(1), because the noncompliance--if any--did not present the "extraordinary circumstances" of the impermissible bias or abdication cases). We also enforced an appeal waiver notwithstanding the defendant's claim that the sentencing court failed to make certain downward departures prior to sentencing. United States v. Rivera, 971 F.2d 876, 896 (2d Cir. 1992); see also United States v. Buissereth, 638 F.3d 114, 115-16 (2d Cir. 2011) (enforcing appeal waiver despite district court's failure to: rule on [i] objections to the pre-sentence report (PSR) and [ii] requests for downward departures; adopt findings of PSR; discuss the § 3553(a) factors; and calculate applicable sentencing range).

The decisive considerations dividing these cases appear to be the nature of the right at issue and whether the sentence "was reached in a manner that the plea agreement

9

did not anticipate." United States v. Liriano-Blanco, 510 F.3d 168, 174 (2d Cir. 2007). As to the nature of the right, a defendant pleading guilty "can waive elemental constitutional and statutory rights." United States v. Braimah, 3 F.3d 609, 611 (2d Cir. 1993); see also McCarthy v. United States, 394 U.S. 459, 466 (1969) ("A defendant who enters [a guilty] plea simultaneously waives several constitutional rights . . . ."); United States v. Waters, 23 F.3d 29, 36 (2d Cir. 1994) (holding that ex post facto challenge to statute of conviction was waived by pleading guilty without preserving the issue). However, "a defendant may be deemed incapable of waiving a right that has an overriding impact on public interests," United States v. Ready, 82 F.3d 551, 555 (2d Cir. 1996), as such a waiver may "irreparably discredit[] the federal courts," id. at 556 (quoting United States v. Mezzanatto, 513 U.S. 196, 204 (1995)). As to unanticipated matters at sentencing, "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." United States v. Marin, 961 F.2d 493, 496 (2d Cir. 1992).

Neither consideration warrants voiding Abramo's appeal waiver. There is no suggestion that the sentencing judge

was biased or that he abdicated his judicial responsibility; to the contrary, the constitutional error during sentencing arose following a careful consideration of a baffling legal issue--if indeed there was any error.[4]  Any issue as to Abramo's knowledge aside, the sentencing process was exactly as anticipated: The district court applied the 2008 Guidelines, as contemplated by the following *three* stipulations from the plea agreement: (1) that the 2008 Guidelines be used; (2) that the applicable Guidelines sentence was eighteen years; and (3) that the agreement was binding even if the court used a different Guidelines range. Joint Appendix at 59-62.  No public interest was impaired by Abramo's waiver, and recognizing the waiver does not impugn the integrity of the judiciary or the sentencing process.

---

[4] Because the Guidelines are only advisory, applying a provision that was amended after the charged offense violates the Ex Post Facto Clause only where there was a "'substantial risk'" that the imposed sentence "'was more severe'" because of the amendment.  United States v. Ortiz, 621 F.3d 82, 87 (2d Cir. 2010) (quoting United States v. Turner, 548 F.3d 1094, 1100 (D.C. Cir. 2008)), cert. denied, 131 S. Ct. 1813 (2011).  Here, Judge Rakoff was aware of the discrepancy between the two Manuals, but concluded that it had no effect on the sentence he was imposing because the Guidelines were not "operating in a way that g[ave] the Court any meaningful guidance."  Joint Appendix at 158. This explicit consideration of the phenomenon that arguably implicates the Ex Post Facto Clause, and the decision to discount or disregard the provision said to create the violation, may eliminate any "significant risk" of a more severe sentence.

Rather, by agreeing not to appeal, Abramo avoided another life sentence and capped his sentencing exposure. (The government presumably would not have offered the deal if the lower Guidelines range were applicable.) If in such circumstances a waiver were found unenforceable, then "the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." Yemitan, 70 F.3d at 746, 748.

United States v. Rosa, 123 F.3d 94 (2d Cir. 1997), is not to the contrary. In Rosa, we noted in dicta that "[w]e will certainly often be willing to set aside the waiver and accept appeal when constitutional concerns are implicated, whether those concerns be related to a particular constitutional provision such as the *ex post facto clause* . . . ." Id. at 101 (emphasis added). This dicta should be read in view of the "disturbing characteristic[s]," id. at 100, of the plea agreement in Rosa: The parties did not stipulate to a sentence below which the defendant would not appeal (in this case, eighteen years); rather, the defendant agreed not to appeal a within-Guidelines sentence regardless of the court's Guidelines calculation. The agreement thus "may [have] subject[ed] a defendant to a sentence vastly greater than he, or possibly even the Government, could have

12

anticipated." Id.  In any event, the dicta dates from the era of mandatory Guidelines, a variable with impact on ex post facto issues.  (Moreover, the Rosa court enforced the waiver notwithstanding its "disturbing characteristic[s]," id.)

**II**

Abramo argues that he did not knowingly or intelligently agree to the appeal waiver because he was ignorant of his existing ex post facto rights.  He invokes contract principles, classifying the Guidelines stipulations as a mutual mistake of fact that voids the contract.  Abramo Br. at 26.

A mutual mistake concerning the proper Guidelines range is an insufficient basis to void a plea agreement.  In United States v. Rosen, 409 F.3d 535 (2d Cir. 2005), the parties overlooked an ex post facto issue (among others) when calculating the stipulated Guidelines range in the plea agreement, id. at 541-42; the district court applied the otherwise proper calculation, which yielded a stricter Guidelines range, id. at 544.[5]  We held that the defendant's

---

[5] Resolving a potential ex post facto issue should yield a more lenient result, but other errors in the calculation led to the stricter range.  (The enhancement that triggered the potential ex post facto issue had been erroneously omitted from the parties' calculation, so applying the earlier Guidelines Manual did lower the

request to withdraw his plea was properly denied. Because the plea agreement contained "express provisions with respect to the possibility of a mistaken prediction as to sentencing calculations," the agreement was "not a proper candidate for rescission on the ground of mutual mistake." Id. at 548-49. (Rosen did not involve an appeal-waiver provision, but we see no reason why Rosen's approach would not be valid in this context as well. See United States v. Castillo, 303 F. App'x 989 (2d Cir. 2008) (summary order).)

But Rosen (and Castillo) involved Guidelines calculation errors of the garden variety, not alleged violations of constitutional rights.[6] Abramo distinguishes Rosen by claiming that the Guidelines error here arose from his ignorance of existing[7] constitutional rights. Abramo Br. at 27. (The government does not argue that Rosen is

---

ultimate Guidelines range).

[6] As noted, the Rosen court recognized the potential ex post facto issue that the parties overlooked, and applied the correct Manual; Rosen thus did not argue that his ex post facto (or other constitutional) rights were violated.

[7] Our cases foreclose the possibility that a plea agreement can be nullified by a change in law after the agreement is executed: A defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver." United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005) ("Morgan II"). "[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." Id.

14

controlling; in fact, it does not even cite Rosen.) Abramo's argument derives from our dicta: We have hinted that "ignorance of existing rights may void a plea agreement and a waiver of appellate rights," United States v. Roque, 421 F.3d 118, 122 (2d Cir. 2005). For example, in United States v. Morgan ("Morgan I"), we did not foreclose the possibility that an otherwise valid waiver could be unenforceable "if a defendant can establish that he was unaware of his Apprendi rights at the time he entered into his plea agreement." 386 F.3d 376, 381 n.3 (2d Cir. 2004); see also Morgan II, 406 F.3d at 137 n.2 (reiterating that existing-rights argument is not reached); United States v. Haynes, 412 F.3d 37, 39 (2d Cir. 2005) (per curiam) (citing Morgan II).

It is unclear, however, why a hypothetical claim based on "ignorance of existing rights" is not subsumed by a claim based on ineffective assistance of counsel, which can survive an appeal waiver "where the claim concerns 'the advice [the defendant] received from counsel.'" Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (quoting United States v. Torres, 129 F.3d 710, 715-16 (2d Cir. 1997)). A lawyer's obligations during plea negotiations include informing the client of constitutional rights that

15

affect the plea.  Thus, a defendant claiming ignorance of existing constitutional rights during plea negotiations is in effect arguing that the advice given by his counsel was inadequate or incorrect.  Such a deficient performance is one element of an ineffective-assistance claim.  Id. at 140 (referencing Strickland v. Washington, 466 U.S. 668, 688, 693 (1984)).  Were a separate "ignorance of existing rights" claim readily available, a defendant could litigate the same issue twice.

That concern is particularly acute here.  Abramo claims "ignorance of existing rights" in this appeal, but he has carefully reserved an ineffective-assistance claim for a habeas petition.  Abramo Br. at 28.  (And he goes further, arguing that the "specter" of the ineffective-assistance claim "should give additional weight to finding the waiver clause unenforceable" in this case.  Id.)  We cannot say that a claim alleging ignorance of existing rights will always be subsumed by a claim of ineffective assistance, but on these facts Abramo's alleged ignorance of his ex post facto rights is relevant only in an ineffective-assistance claim (which is not raised here, and as to which we express no view).

Moreover, even assuming that Abramo was not aware of

16

the ex post facto issue when he pled guilty, he was well aware of it by the time of sentencing. Yet he made no motion to withdraw his plea and took no step to preserve the issue for appeal. Instead he elected to ask that this be taken into account merely as a sentencing factor under § 3553(a). And he made this election knowing that he had waived his right to appeal any sentence of eighteen years or less.

Under these circumstances, we hold that the plea waiver is enforceable.

## CONCLUSION

For the foregoing reasons, Abramo's appeal is dismissed.