**UNITED STATES of America,**

v.

**Shaheid BILAL, Defendant.**

**No. 10 Cr. 129 (DC).**
**No. 12 Civ. 5589 (DC).**

United States District Court,
S.D. New York.

April 23, 2013.

---

Preet Bharara, Esq., United States Attorney for the Southern District of New York, by Brian A. Jacobs, Assistant United States Attorney, New York, NY.

Shaheid Bilal, Fairburn, GA, Defendant Pro Se.

## MEMORANDUM DECISION

CHIN, Circuit Judge.

On March 14, 2011, defendant Shaheid Bilal was convicted, pursuant to a guilty plea, of conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349. On August 31, 2011, I sentenced him principally to 37 months' imprisonment and imposed restitution, jointly and severally with his co-defendants, in the amount of $461,114. Proceeding *pro se*, Bilal now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis of (1) an alleged miscalculation in his criminal history category, (2) a challenge to the restitution order, and (3) ineffective assistance of counsel.[1] For the reasons described below, his motion is denied.[2]

### BACKGROUND

**A. The Facts**

Between 2005 and 2007, Bilal participated in an organized mortgage fraud scheme. (PSR ¶¶ 2–6).[3] Together with

---

**1.** Because Bilal is proceeding *pro se,* I have accorded his motion the liberal construction intended for *pro se* litigants. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983).

**2.** Because I find that "it plainly appears from the face of the [§ 2255] motion … and the prior proceedings in the case that [Bilal] is not entitled to relief," Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b), I do not order the United States

Attorney to file a response to the instant motion. *See Armienti v. United States,* 234 F.3d 820, 822–23 (2d Cir.2000).

**3.** References are as follows: "Ind't" for the Indictment filed February 19, 2010; "Plea" for the plea agreement, dated March 11, 2011; "Plea Tr." for the transcript of Bilal's plea allocution on March 14, 2011; "PSR" for the revised Presentence Investigation Report, dated August 23, 2011; "Sent. Tr." for the transcript of Bilal's sentencing on August 31, 2011; and "Def. Mot." for the motion to

two co-conspirators, he helped prepare fraudulent mortgage loan applications on behalf of various straw purchasers recruited for the scheme. (PSR ¶¶ 19–20, 24). The applications misrepresented the personal and financial information of the straw purchasers, and falsely indicated that they intended to use the properties as their primary residences. (PSR ¶¶ 20, 21). The loans were disbursed by the banks to certain entities for the benefit of Bilal and his co-conspirators. (PSR ¶ 22).[4] In the aggregate, the scheme secured loans in excess of $3 million. (PSR ¶ 17; *see also* Ind't ¶ 24).

On February 19, 2010, Bilal was indicted on one count of conspiracy to commit bank and wire fraud, and four counts of wire fraud, with respect to four specific properties. (Ind't 1–15).

### B.  *Prior Proceedings*

#### 1.  *Plea Agreement & Allocution*

On March 14, 2011, Bilal signed a plea agreement with respect to a single count of conspiring to commit bank and wire fraud in connection with the mortgage fraud scheme. (Plea 1–7). The parties stipulated that the loss amount attributable to Bilal's conduct was greater than $1 million but less than $2.5 million. (*Id.* at 2). They stipulated to an offense level of 20 and a Criminal History Category of III, resulting in a Guidelines range of 41–51 months' imprisonment (the "Stipulated Guidelines Range"). (*Id.* at 3).[5] Moreover, the plea agreement included a waiver of the right to appeal his conviction, which, in relevant part, stated that Bilal:

will not file a direct appeal[,] nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255[,] . . . of any sentence within or below the Stipulated Guidelines Range. . . . The defendant also agrees not to appeal any restitution amount that is less than or equal to the loss amount ($1,000,000 to $2,500,000) stipulated to in paragraph (A)(3) above.

(*Id.* at 5).

On March 14, 2011, Bilal appeared before me and pled guilty to the single count. (Plea Tr. 20:1–18). During the hearing, Bilal indicated that he had fully discussed the case, the indictment, the Guidelines, and the plea agreement with his attorney. (*Id.* at 4:15–18; 7:3–9; 10:14–19; 12:20–13:5). At one point, his attorney interceded when she perceived that Bilal had misunderstood a question I had posed. (*Id.* at 15:19–16:21). He also affirmed that he was satisfied with the representation he had received. (*Id.* at 4:19–21).

During the allocution, Bilal reiterated that he was waiving his right to appeal:

> THE COURT: In your plea agreement you waived your right to appeal or otherwise challenge any sentence within or below the stipulated guidelines range of 41 to 51 months. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: What that means is, if I sentence you to 51 months in prison or anything less, you would have no right to appeal or to otherwise try to challenge your conviction. Understood?

---

vacate, set aside, or correct a sentence dated July 16, 2012.

**4.** The banks in question, First National Bank of Arizona and Lehman Brothers Bank, both FDIC-insured, failed during the 2008 economic downturn. (PSR ¶¶ 16 n.1, 28). As a re-sult, the FDIC became the receiver of both entities and is the victim for purposes of restitution. (PSR ¶ 28).

**5.** As discussed below, these calculations were later determined to be erroneous.

THE DEFENDANT: Yes, your Honor, I understand.

(*Id.* at 12:5–14).

### 2. *Sentencing*

After the Probation Department prepared a draft of the PSR but before sentencing, counsel for Bilal objected to certain prior convictions attributed to Bilal. (PSR 2d Add.). After further investigation, the Probation Department removed these convictions from the PSR. Thus, the PSR calculated Bilal's offense level to be 20. (PSR ¶¶ 31–41). In addition, based on two marijuana possession convictions and a violation for driving under the influence, the PSR placed him in Criminal History Category II, resulting in a Guidelines range of 37 to 46 months' imprisonment. (*Id.* ¶¶ 42–53).[6]

Bilal appeared before me for sentencing on August 31, 2011. At sentencing, Bilal confirmed that he had reviewed and discussed the PSR with his attorney. (Sent. Tr. 2:11–17). I then adopted the facts as set forth in the revised PSR as well as its calculation of the Guidelines range. (Sent. Tr. 3:22–4:1). Thus, I corrected the error that had appeared in the plea agreement.

After hearing arguments from both sides, I sentenced Bilal to 37 months' imprisonment, the bottom of the revised Guidelines range. (*Id.* at 25:1–4). In addition, I imposed restitution in the amount of $461,114, well below the stipulated loss amount. (*Id.* at 25:18–19:5; *see also* Plea 2). Finally, before I concluded the proceedings, I again informed Bilal that he had waived his right to appeal the judgment and sentence. (Sent. Tr. 27:4–6).

### 3. *The Instant § 2255 Motion*

Bilal did not appeal. Instead, on July 16, 2012, Bilal filed a timely motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Def. Mot. 1). He alleged three bases for setting aside his sentence. First, he contends that his criminal history was miscalculated. (*Id.* at 4–5). Second, he challenges the order of restitution. (*Id.* at 6–7). Third, he apparently contends that his attorney was ineffective. For the reasons described below, his motion is denied.

### *DISCUSSION*

### A. *Waiver*

As a preliminary matter, I note that Bilal's plea agreement waived his right to appeal or to otherwise challenge his sentence. Because he entered the agreement knowingly, voluntarily, and competently, I conclude that the waiver is enforceable.

### 1. *Applicable Law*

■ The enforceability of an appellate waiver made "knowingly, voluntarily, and competently" is a longstanding principle of Second Circuit law. *United States v. Riggi,* 649 F.3d 143, 147 (2d Cir.2011) (internal quotation omitted); *see also United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir. 2001) (per curiam). Otherwise, the plea bargaining process would quickly be rendered meaningless. *See United States v. Salcido–Contreras,* 990 F.2d 51, 53 (2d Cir. 1993). Thus, a knowing and voluntary waiver can preclude a defendant's right to challenge a Guidelines sentence, *see United States v. Johnson,* 347 F.3d 412, 414 (2d Cir.2003), or to oppose an order of restitution contemplated by a plea agreement, *see United States v. Pearson,* 570 F.3d 480,

---

**6.** The plea agreement erroneously placed Bilal in Criminal History Category III (and, therefore, miscalculated the applicable Guidelines range) (*See* Plea 3; *see also* PSR ¶ 91 (identifying error in the plea agreement)).

485 (2d Cir.2009) (per curiam). Waivers of the right to collaterally attack a sentence are enforceable under the same principles as a waiver of a right to file a direct appeal. *Garcia–Santos v. United States,* 273 F.3d 506, 509 (2d Cir.2001).

■■■ Nevertheless, a defendant may still challenge the constitutionality of the process by which he waived these rights. *See Johnson,* 347 F.3d at 414 (despite waiver of the right to appeal, such waiver "does not foreclose [defendant] from pursuing his constitutional claim"). Hence, courts will not enforce an appellate waiver when a "defendant claims that the plea agreement was entered into without effective assistance of counsel." *Hernandez,* 242 F.3d at 113–14.

### 2. *Application*

■■■ Bilal's motion is denied because his waiver was knowing and voluntary. Bilal agreed not to collaterally attack a sentence that fell within or below a Guidelines range of 41 to 51 months' imprisonment. (Plea 5). Likewise, he agreed not to appeal an order imposing restitution in an amount less than or equal to the stipulated loss amount of $1 million to $2.5 million. (*Id.*). I sentenced him to 37 months' imprisonment and imposed restitution in the amount of $461,114, both below the stipulated ranges.

Moreover, at his allocution, Bilal affirmed that he (1) had discussed the case and the consequences of pleading guilty with his attorney; (2) had read and discussed the plea agreement with his attorney; (3) had discussed the Guidelines with his attorney; (4) had waived his right to appeal or otherwise challenge a within- or below-Guidelines sentence; and (5) knew that I could order restitution as part of his

sentence. (*Id.* at 4:15–21; 12:15–13:9; 10:14–16; 12:5–13; 9:19–22). Therefore, I conclude that his waiver of the right to challenge his sentence was knowing, voluntary, and therefore enforceable.

Construed liberally, however, Bilal's motion makes a claim for ineffective assistance of counsel. Although a meritorious claim of ineffective assistance would undermine an otherwise enforceable waiver, because I conclude below that his attorney's representation was reasonable, the waiver here was valid.

### B. *Merits*

Assuming that Bilal's § 2255 motion is not foreclosed by his waiver, I conclude that his arguments fail on the merits.

### 1. *Guidelines Calculation*

Bilal first argues that his Criminal History Category was miscalculated because it attributed criminal history points for two misdemeanor marijuana possession convictions. This argument rests on an erroneous understanding of the Guidelines, and it has no merit.

#### a. *Applicable Law*

A defendant's Criminal History Category is calculated by adding up the points, *inter alia,* attributable to each "prior sentence" imposed on a prior conviction. U.S.S.G. § 4A1.1; *see generally United States v. Potes–Castillo,* 638 F.3d 106, 109–10 (2d Cir.2011) (discussing calculation of criminal history). A "prior sentence" includes "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Furthermore, except as excluded by the Guidelines,[7] "[s]entences for misdemeanor

---

7. Sentences for the following offenses are excluded *if* the sentence imposed was a proba-

tionary term of one year or less, or a term of imprisonment of less than thirty days: Care-

and other petty offenses *are* counted" towards a defendant's Criminal History Category. *Id.* § 4A1.2(c) (emphasis added). When, however, a prior sentence is not excluded but resulted only in a fine or a term of imprisonment of less than sixty days, the Guidelines attribute a single criminal history point to the conviction. *Id.* § 4A1.1(c), (a)-(b).

#### b. *Application*

▉ Bilal contends that his two prior possession convictions are misdemeanors that are not included in his Criminal History Category calculation. (Def. Mot. 4–5). He is wrong.

As noted, misdemeanors *are* included in a defendant's criminal history unless specifically excluded by the Guidelines. *See* U.S.S.G. § 4A1.2(c). His marijuana possession charges were neither excluded by the Guidelines, nor similar to an offense excluded by the Guidelines. *See supra* n. 7; *see also, e.g., United States v. Feaster,* 259 F.R.D. 44, 48 (E.D.N.Y.2009) (conviction for criminal possession of marijuana warrants inclusion of one criminal history point); *Percan v. United States,* 294 F.Supp.2d 505, 514 (S.D.N.Y.2003) (marijuana possession conviction results in one criminal history point). Hence, Bilal's two prior marijuana possession convictions were properly included.

For these two convictions, Bilal was sentenced to first, a $363 fine, and second, thirteen-days' imprisonment. (PSR ¶¶ 44, 46). Because these sentences were a fine and a sentence of less than sixty days,

each sentence added one point to Bilal's criminal history calculation. *See* U.S.S.G. §§ 4A1.1(c), 4A1.1 cmt. background (2010) (4A1.1(c) addresses "all other sentences, such as confinement sentences of less than sixty days, probation, fines, and residency in a halfway house"). Hence, with the additional point for the third unchallenged conviction, Bilal should have received—and did receive—three criminal history points, placing him in Criminal History Category II. There was no error.

#### 2. *Restitution Order*

Bilal also challenges the restitution order because he claims that he was never shown "validation" or "verification" of the loans that he received. As discussed below, I conclude that the record provides ample support for the amount of restitution imposed.

#### a. *Applicable Law*

▉ When a defendant pleads guilty to "an offense against property" and one or more identifiable victims have suffered a financial loss, a court must impose restitution. 18 U.S.C. § 3663A(a), (c)(1). The restitution ordered must be "in the full amount of each victim's losses as determined by the court" by a preponderance of the evidence. *Id.* § 3664(e), (f)(1)(A). "When restitution is mandatory, the amount of restitution can only be challenged on the ground that it does not reflect the losses to victims." *United*

---

less or reckless driving, contempt of court, disorderly conduct or disturbing the peace, driving without a license (or with a revoked or suspended license), providing false information to a police officer, gambling, hindering or failure to obey a police officer, insufficient funds check, leaving the scene of any accident, non-support, prostitution, resisting arrest, and trespassing. U.S.S.G. § 4A1.2(c)(1).

The following offenses are *always* excluded: Fish and game violations, hitchhiking, juvenile status offenses and truancy, local ordinance violations that are not criminal violations under state law, loitering, minor traffic infractions, public intoxication, and vagrancy. *Id.* § 4A1.2(c)(2).

*States v. Harris*, 302 F.3d 72, 75 (2d Cir. 2002).

■■■ In most cases, however, a court may not review a restitution order on collateral review. *See Kaminski v. United States*, 339 F.3d 84, 87, 89 (2d Cir.2003) (motions pursuant to § 2255 only allow defendants to challenge a custodial sentence, but speculating that some restitution orders could rise to the level of custodial punishment). A defendant is not entirely without remedy and may still challenge a restitution order pursuant to the common law writ of error coram nobis. *Id.* at 89–90; *see also United States v. Morgan*, 346 U.S. 502, 506, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954) (authorizing the common law remedy under the All Writs Act, 28 U.S.C. § 1651(a)). As with all such writs, however, to succeed, an error underlying the conviction must be "fundamental." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir.1996). Nevertheless, courts will "presume[ ] the proceedings were correct and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512, 74 S.Ct. 247.

#### b. *Application*

■■■ As a preliminary matter, in accordance with the Second Circuit's precedent in *Kaminski v. United States*, 339 F.3d 84 (2d Cir.2003), Bilal may not challenge his restitution order with this § 2255 motion. To the extent, however, that his § 2255 motion requests that I terminate or amend the order of restitution, I construe it as a writ of coram nobis and conclude that Bilal has not identified a "fundamental" error in the proceedings below.

Bilal's motion states, "if the [victims] cannot show 'proff' [sic] of the validation and verification of the loans, I would like the '*restitution*' removed." (Pet. Mot. 6). Here, the evidence supporting the loss amount was substantial. First, Bilal stipu-

lated that the loss amount attributable to his conduct was greater than $1 million but less than $2.5 million. (Plea 2). *See United States v. Granik*, 386 F.3d 404, 411–13 (2d Cir.2004) ("[A] factual stipulation in a plea agreement is a valid basis for a factual finding relevant to sentencing . . . ."). Second, Bilal acknowledged his participation in the scheme to elicit mortgages from banks on behalf of individuals who otherwise would not have qualified for the loans, and he acknowledged submitting fraudulent applications and supporting documentation. (Plea Tr. 16:22–18:18).

Third, the PSR clearly stated that the Federal Deposit Insurance Corporation (the "FDIC"), as the receiver of the defrauded banks, was owed $461,114 (PSR ¶¶ 28, 99–101); Bilal never objected to that finding (PSR Add. & 2d Add.). Fourth, during her sentencing arguments, counsel for Bilal acknowledged that the proposed restitution amount (which I ultimately adopted and imposed), "was under the actual loss amount." (Sent. Tr. 11:19–21). Significantly, at this time, counsel did not argue against imposing restitution as proposed; rather, she merely asked that I "consider a percentage or something that would be a modest amount . . . a percentage in the area of ten percent at most." (*Id.* at 11:21–25). Finally, as I saw from the evidence presented by the government at the trial of certain co-defendants, the government had substantial evidence of the fraud, including cooperating witnesses, the underlying mortgage applications, and records of money transfers. (*See also* Plea Tr. 19:4–21).

After hearing from both parties and Bilal, and as recommended by counsel, I imposed the proposed restitution amount of $461,114 jointly and severally with his co-defendants, to be paid at a rate of ten percent of his monthly gross income once released from prison. *See Kaminski*, 339

F.3d at 87–89 (restitution order that requires payment of ten percent of monthly income "does not come close to" a custodial restraint on liberty and cannot be challenged in a § 2255 motion). Beyond speculating that the victims here might not be able to substantiate the amount of losses incurred, Bilal has provided no evidence to warrant reconsideration of the restitution order. *See Morgan*, 346 U.S. at 512, 74 S.Ct. 247 (applying a presumption that underlying proceedings were without error). (Pet. Mot. 6–7). Hence, I conclude that Bilal has not met his burden of proving that "errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont*, 93 F.3d at 78 (internal quotation marks and omission omitted).

### 3. *Ineffective Assistance of Counsel*

Construed liberally, Bilal's § 2255 motion arguably contends that his attorney rendered ineffective assistance. I disagree.

#### a. *Applicable Law*

The two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires that defendants establish both deficient performance and prejudice to succeed on a claim for ineffective assistance of counsel. *Id.* at 687–96, 104 S.Ct. 2052; *see also Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (discussing *Strickland*). Under the first prong of the *Strickland* standard, courts examine whether counsel's "representation fell below an objective standard of reasonableness." 466 U.S. at 687–88, 104 S.Ct. 2052. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690, 104 S.Ct. 2052; *see also United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir.2004) (decision to stipulate to certain evidence is a "virtually unchallengeable" strategic choice).

Under the second prong, even if an attorney's actions were unreasonable, a defendant must demonstrate that he "was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir.2012) (citing *Strickland*, 466 U.S. at 692–93, 104 S.Ct. 2052). Doing so requires a defendant to establish that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Because the test is conjunctive, a court may choose to dispose of a claim of ineffective assistance on one prong without reaching the other. *Cf. Bennett v. United States*, 663 F.3d 71, 87–89 (2d Cir. 2011) (examining only the prejudice prong).

#### b. *Application*

Bilal alleges two errors by his attorney. First, he contends that she never informed him that his Criminal History Category was miscalculated. Because, as discussed above, the error was corrected and Bilal's Criminal History Category was not miscalculated at sentencing, the argument must fail. *Cf. United States v. Frampton*, 382 F.3d 213, 222 n.8 (2d Cir.2004) (where defendant argued that counsel was ineffective for failing to object to adequacy of a jury instruction, ineffective assistance claim "must fail" because jury instruction contained no error). Second, to the extent he argues that counsel did not challenge the restitution order, again, as discussed above, there was no error.

In fact, counsel strongly advocated for Bilal throughout the proceedings. She discussed the consequences of pleading guilty, the plea agreement, the Guidelines, and the PSR with her client. (Plea 4:15–21; 12:15–13:9; 10:14–16; Sent. Tr. 2:11–17). She raised valid and well-founded

objections to the PSR's calculation of Bilal's criminal history (although she did not raise the meritless objections Bilal raises now). (*See* PSR 2d Add.). Her objections resulted in a revised PSR that moved Bilal from Criminal History Category III to Category II (*id.*), reducing the lower end of the Guidelines range by four months. I adopted those revised findings and Guideline range at sentencing. (Sent. Tr. 3:10–4:1). Thus, in light of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir.1998) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052), any allegation that counsel's representation fell outside "prevailing professional norms" is entirely unsupported by the record, *Morales v. United States*, 635 F.3d 39, 43 (2d Cir.2011) (internal quotation omitted).

### CONCLUSION

For the reasons set forth above, Bilal has not demonstrated any basis for relief under 28 U.S.C. § 2255 or a writ of coram nobis.

Because Bilal has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2255. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.